IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

CIVIL ACTION NO.: 1:19-CV-730-WOB

THE KEENE GROUP, INC.                                            PLAINTIFF

VS.

CITY OF CINCINNATI ET AL.                                       DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This § 1983 case arises from the demolition of 5033 Newfield Avenue (the Property). Plaintiff, the owner of the Property at the time of demolition, argues its due process rights were violated because Defendants failed to provide adequate notice of the Property's demolition. Defendants are the City of Cincinnati and several of Cincinnati's property management officials.

Defendants have moved to dismiss the complaint (Doc. 9) and have separately asked the Court to take judicial notice of several documents. (Doc. 20). The Court heard oral argument on these motions and took the matters under submission. (Doc. 24).

Considering the parties' continuing unsuccessful efforts at settling the case (Doc. 25) the Court issues the following Memorandum Opinion and Order.

*Factual and Procedural Background*

The facts of this case involve two different legal proceedings occurring simultaneously against the Property. On April 27, 2017, a tax-foreclosure action was filed against the Property for the non-payment of real estate taxes by the current owner of record, an individual named "Davis." (Doc. 7 at ¶¶ 13-14; Doc. 7-4). As a result, the Property was ordered to be sold at a sheriff's sale set to occur on July 5, 2018. (*Id.* at ¶¶ 18-19).

Prior to the tax-foreclosure action, Defendants had initiated public nuisance proceedings against the Property. Defendants condemned the Property in December 2017 and had filed numerous code enforcement orders against the Property for violations of Cincinnati Building

1

Code (CBC). (Doc. 7-5). These proceedings were matters of public record. (Doc. 7-5; Doc. 26 at 13:13-21). In step with these proceedings, Defendants held a public administrative hearing to determine whether the Property was a public nuisance. (Doc. 7 at ¶ 27). Defendants mailed notice of the administrative hearing to the parties of interest, posted notice on the Property, and posted notice on Defendants' publicly accessible website. (*Id.*; Doc. 7-5).

On June 29, 2018, Defendants held the administrative hearing. (Doc. 7 at ¶ 27). Davis did not appear, but multiple city officials attended. (Doc. 7-4). The City Inspector testified that the City had previously designated the Property as "dangerous and unsafe" and had served an order on Davis requiring him to either repair or destroy the Property. (*Id.*). However, Davis had "failed to take down and remove the building." (*Id.*).

On July 6, 2018, the sheriff's sale was held. (Doc. 7 at ¶¶ 18-19). Plaintiff Keene Group, Inc. successfully bid for the Property. (*Id.* at 21).

On July 16, 2018, Defendants wrote a letter to Davis, explaining that as a result of the hearing, the Property was a public nuisance to be repaired or razed by government action with costs to the owner. (*Id.* at ¶¶ 30-32; Doc. 7-4).

On July 17, 2018, the court handling the tax-foreclosure action confirmed the sheriff's sale. (Doc. 7 at ¶ 22). On August 9, 2018, the sheriff's deed issued. (*Id.* at ¶¶ 24-25). On August 24, 2018, Plaintiff recorded the sheriff's deed. (*Id.*).

On November 14, 2018, Defendants mailed letters to Plaintiff, stating that Defendants had become aware that Plaintiff was the new owner of the Property, and that the Property was subject to repair or demolition by government action. (*Id.* at ¶¶ 41-42; Doc. 7-5, Doc. 7-6). The letters asked Plaintiff to provide its plan to repair the Property within ten days. (Doc. 7 at ¶ 53). Defendants sent these letters certified mail, return receipt requested, to the mailing addresses

2

Plaintiff had provided to the Hamilton County Auditor and the Ohio Secretary of State. (*Id.* at ¶ 41). However, the letters never reached Plaintiff or its registered agent. (*Id.* at ¶¶ 47, 49). Defendants did not take any follow-up action to ensure the letters had been delivered nor did they verify the letters' delivery status using the certified tracking numbers. (*Id.* at ¶¶ 48, 52).

The Property was destroyed on January 4, 2019. (*Id.* at ¶ 56; Doc. 7-7). Defendants sent the $10,515.00 destruction bill to Plaintiff. (Doc. 18-1).

Plaintiff filed a § 1983 suit against Defendants, alleging the destruction of the Property violated its due process rights and its Fourth Amendment right against unreasonable seizures. Plaintiff also asserts a state law trespass claim and seeks a declaratory judgment that it is not liable for the Property's demolition cost. Defendants filed a motion to dismiss the complaint. (Doc. 9). Defendants have also asked the Court to take judicial notice of several documents. (Doc. 20).

*Analysis*

### A. Standard of Review

To survive a motion to dismiss, the complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible upon its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted). While the Court construes the complaint "in favor of the complaining party" and presumes the general allegations "encompass the specific facts necessary to support" the claim, the Court need not accept as true legal conclusions or unwarranted factual inferences. *Kardules v. City of Columbus*, 95 F.3d 1335, 1346 (6th Cir. 1996).

While the analysis of a motion to dismiss a complaint is generally done without consideration of matters outside the pleadings, "a court may consider 'exhibits attached [to the

3

complaint], public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein,' without converting the motion to one for summary judgment." *Rondigo, L.L.C. v. Township of Richmond*, 641 F.3d 673, 680–81 (6th Cir. 2011) (quoting *Bassett v. National Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

## B. Section 1983 - Due Process Claim

Section 1983 creates a cause of action for the "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. Plaintiff's first cause of action under § 1983 is for the alleged deprivation of its due process rights when Defendants destroyed the Property without notice.

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). The analysis is "flexible" and adjusts to what "the particular situation demands." *Id.* at 319, 334 (internal quotation marks and citations omitted). "The very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation." *Cafeteria and Rest. Workers Union, Loc. 473, AFL-CIO v. McElroy*, 367 U.S. 886, 895 (1961).

With respect to government action taken against real property interests, due process requires an effort "'reasonably calculated' to apprise a party of the pendency of the action." *Jones v. Flowers*, 547 U.S. 220, 226 (2006). However, due process does not require the government to provide actual notice; the Court "judges the adequacy of notice from the perspective of the sender, not the recipient." *Karkoukli's, Inc. v. Dohany*, 409 F.3d 279, 285 (6th Cir. 2005); *Lampe v. Kash*, 735 F.3d 942, 944 (6th Cir. 2013).

Here, the Court finds that no due process violation occurred. The Property was not only condemned at the time of the sheriff's sale, but also "subject to demolition." Under Cincinnati Building Code (CBC), real property found to be "dangerous or unsafe" is "subject to demolition or repair" after the City orders the record owner to destroy or repair the property, and the record owner fails to do so. CBC §§ 1101-57.1, 1101-61.1, 1101-63. An exhibit attached to Plaintiff's complaint describes the following with respect to the June 29 hearing:

> At the Hearing, the City's Inspector presented testimony that; (I) the building was found to be dangerous and unsafe as defined in Section 1101-63 CBC; (II) that an order was issued in conformance with Section 1101-61.2; (III) and that the order was served on the Property's owner in conformance with Section 1101-61.2 CBC; and (IV) that the Property's owner has failed to bring the building into conformance with the applicable provisions of the CBC, and has failed to take down and remove the building.

(Doc. 7-4). Thus before the hearing, Defendants had designated the Property as "dangerous and unsafe," served an order on Davis requiring him to "take down and remove the building," and had received no response from Davis. All conditions necessary for the Property to be subject to demolition had already occurred by the time Plaintiff bid on the Property at the sheriff's sale and thus Plaintiff bought the Property "subject to demolition." Moreover, Defendants had filed multiple code violations against the Property, which were matters of public record. (Doc. 26 at 11:6-9).

"Whatever is notice enough to excite attention and put the party on his guard and call for inquiry, is notice of everything to which such inquiry may have led." *Ming Kuo Yang v. City of Wyoming, Michigan*, 793 F.3d 599, 605 (6th Cir. 2015) (internal quotations omitted). Thus the state is not required to provide additional notice of demolition of nuisance property to subsequent transferees when, at the time of the transfer, the state had already condemned the property and subjected it to demolition as a result of open and unresolved building code violations. *See* ORC §

5

5301.253(A); *Leath v. Cleveland*, 2016 WL 193370 (Ct. App. Ohio 2016). When indications of nuisance proceedings are publicly accessible, a bidder at a foreclosure sale takes title subject to the outcomes of those proceedings. *Id.*

Plaintiff argues that while it was aware the Property was subject to nuisance proceedings in that the Property "needed to be repaired and fixed up," there was "no demolition order on [the Property] at the time [Plaintiff] purchased it." (Doc. 26:6 at 1-3, 7 at 5-12).[1] While an official demolition date may not have been set when Plaintiff bought the Property, numerous signs indicated that some type of action was imminent against the Property at the time Plaintiff gained an interest as described above.

Additionally, Defendants held a public administrative hearing before the sheriff's sale. Defendants posted notice of the hearing online, on the Property itself, and mailed notice to all interested parties at the time. (Doc. 7-5). This notice was available to all potential bidders at the foreclosure sale. A decision stemming from a public nuisance hearing encumbers a nuisance property after the nuisance property is sold at a foreclosure sale, even if the property changes hands before the result of the hearing is sent to the interested parties. To hold otherwise would require the state to attempt to provide notice to potential future owners, or to halt and restart nuisance proceedings every time title to a nuisance property changes hands. Due process does not require the former, as a future buyer does not have a protectable interest yet, and the latter unduly hampers the state's interest in demolishing blighted properties. Owners of condemned properties could undermine condemnation proceedings by transferring title on the eve of enforcement action, and new owners would have little reason to verify the nuisance status of the

---

[1] The parties also dispute when Plaintiff gained a protectable interest in the Property. Plaintiff argues that it first gained an interest at the sheriff's sale, as it paid the full bid via cashier's check. Defendants argue that Plaintiff did not gain an interest until the sheriff's sale was confirmed. As the Court finds Plaintiff's due process rights were not violated under either interpretation, the Court does not opine on the issue.

property despite being in the best position to do so. Requiring Defendants to restart condemnation proceedings with every new owner would create the risk of what occurred here. A buyer of a condemned property, despite knowing the property "needs to be fixed up" (Doc. 26 at 7:5-8), delays taking action to remedy the nuisance issues because it has not received actual notice of how and when the state will act against the property.

Ohio state courts have rejected similar arguments. In *Leath*, the plaintiff purchased property at a sheriff's sale. 2016 WL 193370 at ¶ 2. The City of Cleveland had previously condemned the property and had sent notice of demolition to the record owner. *Id.* at ¶ 3. While the plaintiff admitted that he was aware he had purchased a condemned property, he argued he never received notice of the demolition before the property was destroyed. *Id.* at ¶ 3. The court reasoned the plaintiff carried "the onus [] to inquire about the status of the property…". *Id.* at ¶ 15. The court reasoned that when "a party has actual notice of condemnation and the property is subject to demolition, there is no due process violation for a failure to provide notice prior to demolition." *Id.* at ¶ 14. Rather, it is "up to the purchaser to examine the public records of the appropriate building authority to determine the status of the property." *Id.* at ¶ 16.

In sum, whether a due process violation occurred in a case turns on the particular facts and circumstances of the case. The allegations here show Defendants condemned the Property, filed numerous code violations against the Property which remained open and unresolved, and held a public nuisance hearing for which they posted notice on the Property and their website. Defendants did not deviate from the relevant administrative procedures concerning the removal of blighted properties. On the other hand, Plaintiff was aware there were public nuisance issues with the Property and did nothing to remedy the issues or contact any building agency for the six months between the sheriff's sale and the demolition of the Property. (Doc. 26 at 7:1-8, 20-24;

7

13:13-21). Under the current allegations, it is unclear what more Defendants could have been done short of serving "actual notice" to Plaintiff.

Plaintiff argues that the determining factor in the analysis should be the status of two letters Defendants sent to Plaintiff in November. Plaintiff points out that the letters were sent certified mail, return receipt requested. However, Plaintiff alleges the letters were never delivered; [2] consequently, Defendants would not have received the return receipts. Plaintiff argues Defendants inferred or should have inferred from this that the attempt to give Plaintiff notice had failed, and thus were obligated to verify the status of the letters or attempt to give notice to Plaintiff through additional means.

Plaintiff is correct in that if the government discovers an attempt at notice was ineffectual, the government may be required to take additional action to provide reasonable notice to comply with due process. *Jones*, 547 U.S. at 227. However, "[r]easonableness inquiries occur case by case, circumstantially, and above all with attention to all that the government has done." *Ming Kuo Yang*, F.3d at 604. Solely focusing on the reception of the letters and whether "notice was received" (Doc. 26 at 8:5) is essentially focusing on whether Defendants gave actual notice. The argument does not consider all the other circumstances here, such as the fact that Plaintiff bought a condemned Property subject to numerous open building code violations and which had recently been the subject of a public administrative hearing.

---

[2] While Plaintiff alleges otherwise in the complaint, it appears that the letters may have been returned "undeliverable" to Defendants. (Doc. 26 at 6:11-12). In Defendants second motion (Doc. 20), they ask the Court to take judicial notice of photocopies of two envelopes they assert contained the letters sent to Plaintiff in November. A sticker on the outside of both envelopes reads "RETURN TO SENDER. NO MAIL RECEPTACLE. UNABLE TO FORWARD." As discussed herein, the status of the letters is not determinative. Furthermore the envelopes do not set forth when Defendants received them, and thus do not sufficiently indicate Defendants' knowledge of any failed attempt at notice at the time of the Property's destruction.

After analyzing all the circumstances, the Court finds that Plaintiff had sufficient notice of the demolition of the Property at the time the Property was demolished. Consequently, Plaintiff's §1983 claims asserting a violation of due process will be dismissed.

### C. <u>Section 1983 – Unreasonable Seizure</u>

Plaintiff also asserts a Fourth Amendment violation for a warrantless seizure that occurred when the Property was destroyed. However, the Fourth Amendment only protects against "unreasonable" seizures. Before Defendants demolished the Property, Defendants had condemned the Property and found it to be "dangerous and unsafe" after years of code enforcement issues. They also designated the Property as a public nuisance after holding an administrative hearing, where they accepted evidence from multiple city officials. The Sixth Circuit has reasoned the destruction of property designated as a public nuisance as a result of nuisance proceedings is not an "unreasonable" seizure. *Embassy Realty Investments, Inc. v. City of Cleveland*, 572 Fed. Appx. 339, 345 (6th Cir. 2014). Other circuits have also found the enforcement of remedial orders against a nuisance property does not constitute an unreasonable seizure but is a proper use of "established police power procedures." *Freeman v. City of Dallas*, 242 F.3d 642, 651 (5th Cir.2001); *Hroch v. City of Omaha*, 4 F.3d 693, 697 (8th Cir.1993).

In the cases Plaintiff cites, the properties were not subject to remedial orders as a result of public nuisance proceedings. *See Goodwin v. City of Painesville*, 781 F.3d 314 (6th Cir. 2015) and *United States v. Rohrig*, 98 F.3d 1506 (6th Cir. 1996). The demolition of the Property was the result of administrative procedures initiated to enforce building code, and thus the Court finds the seizure was not unreasonable. Plaintiff's Fourth Amendment claim will be dismissed.

### D. State law – Trespass

Lastly, Plaintiff argues that Defendants committed trespass when they entered onto the Property. As a preliminary matter, Plaintiff does not contest that the City of Cincinnati is entitled to state statutory tort immunity under ORC § 2744.02 for this claim. (Doc. 13 at 18). Regardless, trespass in Ohio requires an unauthorized entry onto private property. *Brown v. Scioto Cty. Bd. of Commrs.*, 622 N.E.2d 1153, 1161 (Ct. App. Ohio 1993). Here, Defendants had authority to enter the Property in January by virtue of the public nuisance proceedings. *Cotton v. City of Cincinnati*, 1:11-CV-00389, 2013 WL 1438030, at *4 (S.D. Ohio 2013); Restatement (Second) Torts § 202. The complaint alleges that Defendants deemed the Property as a public nuisance before the Property was destroyed (Doc. 7 at ¶ 41), and thus Defendants had authority to enter on the Property. The Court will dismiss Plaintiff's trespass claim.

### E. Count II – Declaratory Judgment

Count II of the Amended Complaint is a request for a declaration that Defendants may not seek reimbursement for the demolition costs of the Property from Plaintiff, because Defendants failed to give Plaintiff notice of the demolition. (Doc. 7 at ¶¶ 70-73). The Court construes this as a requested remedy for the alleged constitutional violations asserted in the complaint. As the Court finds no constitutional violation occurred, this count will be dismissed. *See Youkhanna v. City of Sterling Heights*, 934 F.3d 508, 515 (6th Cir. 2019).

### F. Judicial notice

Both parties request the Court to take judicial notice of several documents. (Doc. 9 at 2; Doc. 13 at 3). Additionally, Defendants moved the Court to take judicial notice of several documents discovered after the motion to dismiss was filed. (Doc. 20). However, the Court's opinion does not rely on these documents and would not change if the Court had taken judicial

notice of the documents. Thus the Court will not take judicial notice of any of the proffered documents and will deny the motion to supplement (Doc. 20).

Therefore, having reviewed this matter, and the Court being advised,

**IT IS ORDERED** that:

(1) Defendants' motion to dismiss (Doc. 9) be, and is hereby, **GRANTED;**

(2) Defendants motion to supplement (Doc. 20) be, and is hereby, **DENIED.**

This 13th day of July, 2020.



Signed By:
*William O. Bertelsman*
United States District Judge